MR. JUSTICE GULBRANDSON,
dissenting:
I respectfully dissent.
The agreement in question was titled “Waiver of Right to Protest Annexation and Agreement on Non Conforming Use,” and contained the following language, in addition to that set forth in the majority opinion:
“WHEREAS, the area immediately surrounding the above-described tracts and the tracts themselves are zoned R6900, a residential zoning classification;
“WHEREAS, the above described tracts have historically and are currently being used for an agricultural use;
“WHEREAS, the use now being made of the above-described tracts is a non-conforming use;
“WHEREAS, the City of Billings is desirous of annexing said tracts on the conditions stated; and
“WHEREAS, the Owners of said tracts are willing to waive any rights to protest said annexation on condition of obtaining a more certain land use classification.” (Emphasis added.)
Section 28-3-201, MCA, provides as follows:
“A contract must receive such an interpretation as will make it lawful, operative, definite, reasonable, and capable of being carried into effect if it can be done without violating the intention of the parties. (Emphasis added.)
The parcel of land contained in Certificate of Survey No. 334, located within the City of Billings and having been zoned R-9600 long before the date of the agreement, but bearing a non-residential non-conforming use could not le *476 gaily be the subject of an agreement whereby the City would agree to grant a residential multi-family use variance. Such an agreement, in my view, would constitute contract zoning.
In 82 Am.Jur.2d, Zoning and Planning, Section 17, the aversion to “contract zoning” is explained:
“When zoning power is delegated to a municipality, it is not contemplated that the municipality will bargain away any part of that power to any private landowner. A contract made by the zoning authorities to zone or rezone for the benefit of a private landowner is illegal and is denounced by the courts as ‘contract zoning’ and as an ultra vires bargaining away of the police power. It is reasoned that zoning restrictions and permissions must be governed solely by the public interest, and not by the benefit to an individual applicant.” (Emphasis added.)
The agreement itself recognizes the status and zoning of the land described in Certificate of Survey No. 334. The City of Billings had police power over that specific parcel and could not bargain such power away for the benefit of a private landowner.
It is for that reason that I believe the majority to be in error when they state: “The parties may have intended to assure additional future uses in return for agreeing to annexation.” In my view, such an additional future residential use would constitute illegal contract zoning.
I also believe the majority to be in error when they state: “Surely, they must have intended to receive some consideration for not protesting annexation. These questions must be resolved by the trier of fact.” The plaintiff clearly received something he had not had prior to the agreement, specifically:
(a) a written agreement that the non-conforming commercial uses on parcel 334, zoned single family residential, could continue and in fact be expanded within specified limits;
(b) a written agreement that these same non-conforming *477 uses would be granted for the remaining two tracts after annexation; and
(c) a written agreement that the plaintiff would have a discontinuance of use period of three years, rather than the normal one year period.
District Judge Luedke recognized that interpreting the agreement as requested by the plaintiff would render the agreement illegal by stating in his memorandum:
“However, the overriding message which the terms of the agreement contains, when all terms are considered together, is that the then-existing non-conforming uses were to be protected. The totality of such agreement does not support the position of plaintiff that use of the language, ‘residential uses,’ authorizes the establishment of new or different non-conforming uses. If it did, there would be a problem with respect to the defense of the City as to contract zoning.”
District Judge Luedke interpreted the agreement as referring to non-conforming uses which existed at the time the agreement was executed, the only interpretation which could make the agreement lawful as required by section 28-3-201, MCA.
Finally, the majority opinion suggests that the trial court went outside the agreement when the trial court stated: “The intent of the parties when the agreement is entered into is controlling.”
That statement was actually made in the trial court’s second memorandum explaining its later order granting the plaintiff’s motion to amend findings to state that the other two parcels were in fact zoned agricultural open space on the date of the agreement, and denying plaintiff’s motion to amend the judgment.
The pertinent portion of the trial court’s second memorandum explaining that order is as follows:
“Regardless of the actual zoning of the property on the date of the 1978 agreement, the parties to the agreement operated under the assumption that the tracts were zoned *478 R-9600. The agreement makes this clear. The following statement appears on Page 1 of the agreement:
“ ‘WHEREAS, the area immediately surrounding the above-described tracts and the tracts themselves Eire zoned R-9600, a residential zoning classification [.]’
“A reading of the agreement reveals that the parties were operating under the assumption that the uses listed in the agreement were at that time non-conforming ones. The tenor and purpose of the agreement is clear — the parties were attempting to insure that the uses then being made of the property would continue following annexation by the City. The fact that the parties mistakenly believed that the parcels were zoned R-9600 doe not change the judgment of the Court. The intent of the parties when the agreement was entered into is controlling.”
I would affirm the judgment of the trial judge.